# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**GLOBAL IMAGING ACQUISITIONS
GROUP, LLC,**
        **Plaintiff,**

  v.

                                          Case No. 14-C-0635

**KEITH RUBENSTEIN, et al.,**
        **Defendants.**

## DECISION AND ORDER

The plaintiff, Global Imaging Acquisitions Group, LLC ("Global"), is a Wisconsin company that repairs and refurbishes probes used in medical-imaging equipment (such as ultrasound machines) and sells refurbished medical-imaging equipment. In April 2014, Global purchased the assets of another medical-imaging company, Med Pro, that was in receivership.[1] Global alleges that, around this time, some of Med Pro's former owners and employees conspired with others to steal Med Pro's, and then Global's, customer information, which are trade secrets. These individuals then used that information to steer customers away from Global and to other medical-imaging companies with which they were affiliated. One of those companies is Acertara Acoustic Laboratories LLC ("Acertara"). The complaint alleges that Acertara hired a former Med Pro employee, David Dallaire, who assisted Acertara and its owner, Wayne Moore, in stealing Global's customer information. Global has named Acertara, Dallaire, and Moore as defendants in this case, and these defendants have moved to be dismissed on the ground that they are not subject

---

[1]Actually, there were two Med Pro companies, but this detail can be ignored.

to personal jurisdiction in Wisconsin. See Fed. R. Civ. P. 12(b)(2). I consider that motion in this order.

Acertara is organized under Colorado law and has its principal place of business there. It has no offices in Wisconsin, and as far as the record reveals, it conducts no business in Wisconsin. Acertara's owner and chief executive, Wayne Moore, is a Colorado resident. Moore has not been physically present in Wisconsin since 2009. His visit in 2009 was made while he was working for another company, before Acertara was formed. Dallaire is currently an employee of Acertara and a Colorado resident. Before he began working at Acertara, Dallaire was employed by Med Pro. While he was employed by Med Pro, Dallaire worked out of its Colorado office. He has never been a resident of Wisconsin, and he has not been physically present in Wisconsin since 2012. A far as the record reveals, Dallaire's trip in 2012 was in no way related to the facts of this case.

Global's amended complaint alleges that Dallaire, Moore, and Acertara conspired to steal Med Pro's, and later Global's, trade secrets and customers, in furtherance of Acertara's business. The plan involved rigging Med Pro's email accounts so that any emails sent to Med Pro or Global by actual or potential customers would be diverted to Acertara; accessing and copying Med Pro and Global's database of customer information; stealing Med Pro and Global's hard drives and other electronic storage devices containing customer information; and otherwise taking actions that were intended to steer actual and potential customers away from Global and to Acertara. The complaint alleges that Dallaire is the one who actual stole Global's customer information. He is alleged to have stolen Global's (formerly Med Pro's) hard drives and other electronic storage devices, to have rigged his Med Pro email to secretly forward potential and actual customer emails to

2

Dallaire's personal email account, and to have accessed without authorization Global's (formerly Med Pro's) customer database. The complaint alleges that Moore knew about and encouraged Dallaire's actions, and that the information Dallaire stole was used in the course of Acertara's business. Global alleges a number of causes of action in connection with these events, including among others misappropriation of trade secrets, violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511.

In a federal question case such as this one, a federal court has personal jurisdiction over a defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant. Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates Houston, 623 F.3d 440, 443 (7th Cir. 2010). The federal statutes under which Global sues do not authorize nationwide service. Thus, Global must show that Wisconsin law authorizes service of process on the defendants in Colorado. In addition, Global must show that subjecting the defendants to personal jurisdiction in Wisconsin would not violate due process. Id. The Wisconsin long-arm statute, governing service of process, has been interpreted to confer jurisdiction to the limits of due process, and thus courts usually focus only on whether due process authorizes personal jurisdiction and do not perform a separate inquiry under the long-arm statute. See, e.g., Felland v. Clifton, 682 F.3d 665, 678 (7th Cir. 2012).

Under the due process clause, a defendant is subject to personal jurisdiction in a particular state only if the defendant has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting

Milliken v. Meyer, 311 U.S. 457, 463 (1940)). It is unconstitutional to force a defendant to appear in a distant court unless it has done something that should make it "reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)).

Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts. Mobile Anesthesiologists, 623 F.3d at 444. Global does not assert, and the evidence does not support, a claim of general jurisdiction over Acertara, Moore, or Dallaire in Wisconsin, so Global must show that Wisconsin can exercise specific jurisdiction over these defendants for the particular claims asserted against them in the amended complaint. Specific personal jurisdiction is appropriate when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities. Id.

The defendants argue that they are not subject to specific jurisdiction in this case because they have no connections to Wisconsin—they are not Wisconsin residents or corporations and have conducted no business or other significant activities in Wisconsin. If Global were suing the defendants solely for breach of contract, the defendants' argument would be a strong one. See Northern Grain Mktg., LLC v. Greving, 743 F.3d 487, 493 (7th Cir. 2014) ("contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum.") However, most of the claims Global has alleged against the defendants involve intentional, allegedly tortious acts that were specifically targeted at Global, such as the defendants' stealing Global's trade secrets and tampering with Global's electronic databases and electronic communications.

4

The analytical framework for assessing personal jurisdiction in the context of intentional torts such as these is different than the framework used in breach-of-contract cases. See Felland, 682 F.3d at 674 (stating that "the nature of the purposeful-direction/ purposeful-availment inquiry depends in large part on the type of claim at issue," and that "the tort-vs.-contract distinction is highly significant to the personal-jurisdiction analysis").

In a case involving intentional torts, courts apply the "express aiming" line of cases, which begins with the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984). See Tamburo v. Dworkin, 601 F.3d 693, 702 (7th Cir. 2010) (noting that cases involving intentional torts are governed by Calder line of cases). In Calder, the Court held that Florida citizens who lacked sufficient contacts with California were nonetheless subject to personal jurisdiction in California because they published an allegedly libelous story about a California resident. The Court stated that jurisdiction over the defendants was proper in California based on the "effects" of their Florida conduct in California. 465 U.S. at 789. The Court noted that the defendants were "not charged with mere untargeted negligence," but rather "intentional" and "allegedly tortious" actions that were "expressly aimed at California." Id. The Court found that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." Id. at 790.

According to the Seventh Circuit, Calder creates three requirements for personal jurisdiction in the context of intentional torts: (1) intentional conduct (or "intentional and allegedly tortious" conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state. Tamburo, 601 F.3d at 703. But this three-part test is really a two-part test,

5

Case 2:14-cv-00635-LA   Filed 06/01/15   Page 5 of 9   Document 73

because "[a]s an analytical matter, Calder's 'express aiming' inquiry overlaps with the question whether the defendant knew the plaintiff would suffer the injury in the forum state." Id. at 704.

In the present case, Global alleges that Acertara, Moore, and Dallaire engaged in intentional and tortious conduct. As noted, Global alleges that Moore and Dallaire (who are agents of Acertara) conspired to steal Global's trade-secret customer information and to tamper with its electronic databases and communications. Moreover, because the target of this alleged conspiracy, Global, is a Wisconsin company with its main office in Wisconsin, the defendants expressly aimed their conduct at Wisconsin and knew that the effects of their actions would be felt in Wisconsin. Thus, Acertara, Moore, and Dallaire are subject to personal jurisdiction in Wisconsin in connection with those acts.

Before concluding, I address the defendants' argument that because they submitted affidavits along with their motion to dismiss, Global was required to go beyond the allegations of its complaint and submit affidavits to show that the defendants are subject to personal jurisdiction in Wisconsin. See Def. Br. at 2; Reply Br. at 1–2. In support of this argument, the defendants cite Purdue Research Foundation v. Sanofi-Synthelabo, S.A., which states that "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." 338 F.3d 773, 783 (7th Cir. 2003). But Purdue was a breach-of-contract case, not a case involving intentional torts. Id. at 775. In a breach-of-contract case, the personal-jurisdiction inquiry will usually turn on the nature and quantity of the defendant's contacts with the forum state, and the facts relating to those contacts can be established independently of the merits of the case.

For example, the number of times a defendant set foot into the forum state will likely have nothing to do with whether the defendant breached the contract and thus can be established through affidavits or a hearing without also resolving the merits of the case. In contrast, when the basis for personal jurisdiction is that the defendant engaged in intentional and tortious conduct expressly aimed at the forum state, the personal-jurisdiction inquiry merges with the merits of the suit. In the present case, for example, Global cannot prove that Moore and Dallaire committed intentional torts aimed at Wisconsin without also proving the merits its claims—i.e., that Moore and Dallaire conspired to steal Global's trade-secret customer information and tamper with its electronic databases and communications. As a practical matter, then, Global cannot be expected to go beyond the allegations of its complaint in responding to the defendants' motion to dismiss.[2]

Cases recognize that when personal jurisdiction is based on express aiming, the plaintiff does not need to go beyond the allegations of its complaint in responding to a motion to dismiss. In Calder, for example, the newspaper story was described as "allegedly libelous," 465 U.S. at 788, and the Court did not require the plaintiff to prove that the defendants had in fact committed libel in order to proceed with the case. In Felland v.

---

[2]I note that Global does not dispute the facts alleged in the defendants' affidavits. That is, it does not dispute that the defendants are residents of Colorado and that they have had few contacts with Wisconsin. Had Global wanted to dispute those facts, then of course it would have been required to submit affidavits or other evidence in opposition to the defendants' motion. I also note that the defendants, in their affidavits, do not deny that they knew that Med Pro and Global were and are Wisconsin companies. If the defendants had denied that they knew these companies were from Wisconsin, then perhaps an evidentiary hearing would be needed on that question, which is distinct from the merits. See Tamburo, 601 F.3d at 706.

Clifton, the Seventh Circuit found proper an exercise of personal jurisdiction over an out-of-state defendant on an express-aiming analysis based on allegations that the defendant committed a fraud against the forum state's residents; the court did not require the plaintiffs to prove that the defendant had in fact committed such a fraud. 682 F.3d at 676 ("But whether [defendant's] communications were in fact "lulling" communications that did deceive [plaintiff] is not important on a motion to dismiss for lack of personal jurisdiction. [Plaintiff] alleges, and we must accept as true, that Clifton intentionally misrepresented important information about the progress and financing of the La Perla Project."). And in Tamburo v. Dworkin, the court sustained an exercise of personal jurisdiction over out-of-state defendants on the ground that they were alleged to have engaged in a concerted campaign of blast emails and postings on their websites accusing the plaintiff, a resident of the forum state, of stealing their data and urging potential customers to boycott the plaintiff's products. 601 F.3d at 697. Again, the court did not require the plaintiff to prove that the allegations of his complaint were true in order to establish personal jurisdiction.

In sum, although Acertara, Moore, and Dallaire acted from points outside Wisconsin, they are alleged to have specifically aimed their tortious conduct at Global and its business in Wisconsin with the knowledge that Global would suffer the "brunt of the injury" there. Id. These allegations suffice to establish personal jurisdiction over the defendants. Accordingly, **IT IS ORDERED** that the defendants' motion to dismiss for lack of personal jurisdiction is **DENIED**.

8

Dated at Milwaukee, Wisconsin, this 1st day of June 2015.

                                     s/ Lynn Adelman
                                     _____
                                     LYNN ADELMAN
                                     District Judge

9

Case 2:14-cv-00635-LA   Filed 06/01/15   Page 9 of 9   Document 73